NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| G-I HOLDINGS AND SAMUEL J. HEYMAN,<br><br>Plaintiffs,<br><br>v.<br><br>RELIANCE INSURANCE COMPANY, HARTFORD FIRE INSURANCE COMPANY, TWIN CITY FIRE INSURANCE COMPANY, NEW JERSEY PROPERTY-LIABILITY INSURANCE GUARANTY ASSOCIATION AND NEW YORK PROPERTY/CASUALTY INSURANCE SECURITY FUND,<br><br>Defendants. | **Hon. Dennis M. Cavanaugh**<br><br>**OPINION**<br><br>Civil Action No. 00-6189 (DMC) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Defendant New Jersey Property-Liability Insurance Guaranty Association's ("NJPLIGA" or "Defendant") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Civil Rule 7.1(i), no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendant's motion for summary judgment is **granted**.

**I.   BACKGROUND**

This is a coverage action brought by Plaintiffs G-I Holdings ("G-I") and Samuel J. Heyman ("Heyman") (collectively "Plaintiffs") for losses sustained in defending three fraudulent conveyance

actions. Plaintiffs originally brought suit against Reliance Insurance Company ("Reliance"), their primary insurer and Great American Insurance Company ("Great American"), their umbrella insurer pursuant to directors and officers ("D&O") policies. Reliance has since become bankrupt and Hartford Fire Insurance Company ("Hartford") allegedly purchased the assets and renewal rights to Reliance's directors and officers book of business. Additionally, Plaintiffs joined NJPLIGA and the New York Property/Casualty Insurance Security Fund, which Plaintiffs allege are statutorily obligated to make payments on Plaintiffs' covered claims due to Reliance's insolvency.

### A. Previous Asbestos Litigations

Beginning in the late 1970s, numerous actions were filed against GAF (the predecessor in interest to G-I), alleging bodily injury as a result of exposure to GAF's asbestos containing products and byproducts. In September of 1988, GAF and a group of other asbestos defendants formed the Center for Claims Resolution, Inc. ("CCR"), a non-profit corporation created to administer and arrange for the evaluation, settlement, payment or defense of asbestos related claims against its members. In 1993, CCR negotiated a settlement with representatives of a proposed class consisting of future asbestos claimants. While the proposed settlement was initially approved by the United States District Court for the District of Eastern Pennsylvania in a decision captioned Carlough v. Amchem Products, Inc., the Third Circuit subsequently vacated the settlement. The Third Circuit's decision was affirmed by the Supreme Court. See Amchem Prod., Inc. v. Windsor, 521 U.S. 591 (1997).

By 1996, GAF was facing asbestos liability estimated to be approximately $213.8 million for existing claims, with the prospect of hundreds of thousands more such claims to be asserted in the future. GAF terminated its membership in the CCR on January 17, 2000. At that time GAF's

liabilities totaled approximately $309.2 million.  Additionally, CCR alleges that as of January 1, 1997, GAF was obligated to the CCR in the amount of $68.3 million for its share of defense costs and indemnity payments.

During all relevant times to this action Heyman served as the chief executive officer, controlling shareholder and chairman of the board of directors for GAF as well as the same for ISP. Until January 1, 1997, GAF held 100% of the stock in ISP Holdings, Inc. ("ISPH").  ISPH owned 83.5% of the stock in ISP.  ISP had an annual income of about $67 million, total assets of $1.6 billion and stockholder's equity, net of minority public shares, of about $593 million.  Effective January 1, 1997, GAF made a transfer by distribution of 100% of GAF's ISPH shares to GAF's shareholders.  Heyman was the majority shareholder of GAF.  ISP then merged with ISPH and changed its name to International Specialty Products, Inc. ("ISPI").  Heyman then transferred a substantial part of his ISPI stock to his own companies.

During October and November of 2000, GAF and other newly created corporate subsidiaries were collapsed into a single entity, re-named as G-I Holdings.  G-I filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of New Jersey on January 5, 2001.

### B.    Underlying Fraudulent Conveyance Actions

Three lawsuits have been commenced against Plaintiffs, all alleging that the 1997 transfers constituted a fraudulent conveyance under New York law.  A putative class action was filed by Harry W. Nettles in the United States District Court for the Southern District of New York on January 3, 2000 ("Nettles claim").  Third Am. Compl. at ¶¶26-33.  That same year, CCR filed an action September 19, 2000 ("CCR action").  Id. at ¶¶34-38.  Approximately a year later, on September 17, 2001, the Official Committee of Asbestos Claimants of G-I in the Chapter 11 bankruptcy

3

proceedings filed an action against Plaintiffs ( "OCAC action"). Id. at ¶¶39-43. The complaints in each of these actions allege that Plaintiffs transferred GAF shares to ISPH, in an effort to place these shares beyond the reach of GAF's creditors. It is alleged that no consideration was paid to GAF for the transfer of ISPH's stock. Based on these allegations, the plaintiffs in the underlying actions sought compensatory damages, equitable relief and punitive damages.

### C.     Reliance Insurance Agreement

Plaintiffs purchased from Reliance a primary D&O insurance policy, number NDA 0152124-99B, effective July 1, 1999 to July 1, 2002 ("the Reliance Policy"). Id. at ¶13. The Reliance Policy was cancelled effective July 1, 2000. Id.

The Reliance D&O policy provides coverage to G-I to the extent it indemnifies Heyman for covered claims. Additionally, the Reliance Policy provides direct coverage to Heyman for covered claims. The Reliance policy provides "company reimbursement" coverage above a $250,000 self-insured retention, which retention exhausts through indemnity and defense costs paid by plaintiffs. If G-I refuses to indemnify Heyman then the Reliance Policy's direct coverage to Heyman applies above the $250,000 retention unless G-I refuses to indemnify for reasons of "Financial Insolvency."

The Reliance Policy was written on a "claims made basis" and affords insurance to directors, officers and GAF for any "wrongful act which takes place during or prior to the policy period." The policy further states that "[a]ll claims arising out of the same Wrongful Act or Interrelated Wrongful Act of one or more of the Insureds shall be considered a single claim." Id. at ¶16. The policy contained a commercial general liability ("CGL") Exclusion, barring coverage for a variety of

4

tortious or illegal acts.[1]  Additionally, the policy contained a "Pollution Exclusion."[2]  The policy defined "pollutants," including *inter alia*, "asbestos or asbestos-containing products."  Def.'s Ex. E, Exclusions, Section V.

Plaintiffs gave Reliance notice of the CCR, OCAC and Nettles actions.  Id. at ¶¶44-53.  On September 8, 2000, Reliance denied coverage for the Nettles claim.  Id. at ¶50.  On October 30, 2000, Reliance denied coverage for the CCR claim.  Id. at ¶54.  Reliance never rendered a coverage position regarding the OCAC claim.  Id. at ¶57-58.

### D. Related Actions and Claims

On October 3, 2001, the Commonwealth Court of Pennsylvania declared Reliance insolvent.  Plaintiffs have agreed not to pursue their claims against Reliance in this coverage action; rather

---

[1] The Insurer shall not be liable to make any payment for Loss in connection with any Claim made for Loss in connection with any Claim made against the Directors and Officers or, with respect to Insuring Agreement (C), the Company:

(A) for bodily injury, sickness, disease, emotional distress, mental anguish, outrage, humiliation, death, false arrest or imprisonment, abuse of process, malicious prosecution, defamation, violation or invasion of any right of privacy or private occupancy, trespass, nuisance or wrongful entry or eviction, or for damage to or destruction of any tangible property including loss of use thereof; . . .
(D) brought or maintained by or on behalf of the Company or any Director or Officer, in any capacity

[2] (E) for based upon, arising from, or in any way related to
   (1) the actual alleged or threatened discharge, dispersal, release or escape of pollutants; or
   (2) any direction, request or voluntary decision to test for, abate, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, nuclear material or nuclear waste, including without limitation any Securities Claim or any other Claim by or on behalf of the Company or its shareholders in their capacity as such.  Def.'s Ex. E, Exclusions Section V.

Plaintiffs' claims against Reliance are being pursued in the liquidation proceeding pending before the Commonwealth Court of Pennsylvania. See Op. in the Matter of G-I Holdings v. Reliance Insurance Co., et al., Civil Action No. 00-6189 (DMC) dated March 23, 2004.

Plaintiffs allege that Hartford entered into an asset purchase agreement with Reliance, effective July 1, 2000, to purchase the assets and renewal rights to Reliance's Directors and Officers book of business. Further, Plaintiffs allege that Hartford thereby assumed Reliance's obligations under its policy. Hartford denies that it assumed such obligations and liabilities, taking the position that it took only a limited reinsurance role pursuant to its agreement with Reliance.

### E.     NJPLIGA

NJPLIGA is an unincorporated, non-profit association created pursuant to the New Jersey Property-Liability Insurance Guaranty Association Act. See N.J.S.A. 17:30A-1 et seq. NJPLIGA is comprised of licensed insurers admitted or authorized to transact the business of insurance in New Jersey. The purpose of NJPLIGA is to provide limited protection to policyholders and claimants of policyholders of insurance companies that become insolvent. Pursuant to the Guaranty Association Act, NJPLIGA is required to assume contractual obligations of an "insolvent insurer" to its policyholders only to the extent such obligations constitute "covered claims." See N.J.S.A. 17:3-A-8(a)(1); N.J.S.A. 17:30A-5.

NJPLIGA's liability is limited to $300,000 for each "covered claim,"[3] as defined by the

---

[3]     "Covered Claim" means an unpaid claim, including one of unearned premiums, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this act applies, issued by an insurer, if such insurer becomes an insolvent insurer after January 1, 1974, and (1) the claimant or insured is a resident of this State at the time of the insured event; or (2) the

6

Guaranty Association Act. Excluded from the definition of "covered claim" are "counsel fees for prosecuting suits for claims against the association" and prejudgment interest on liquidated claims. N.J.S.A. 17:30A-5. Additionally, NJPLIGA is immunized from all claims asserted against it for injury, damage or loss resulting from the tortious conduct of its officers, agents, employees acting within the scope of their duty. N.J.S.A. 17:30A-17.

In this case, Plaintiffs seek recovery from the NJPLIGA because Reliance has been declared insolvent. Plaintiffs argue that NJPLIGA is obligated to make payments to Plaintiffs on its "covered claims" under the Reliance policy.

### F. Great American Insurance - Umbrella Insurance Policy

Plaintiffs also named their umbrella insurer in this action - Great American. When this case was first removed from the Superior Court of New Jersey, Plaintiffs dismissed the action in the District Court and filed an amended complaint in the United States Bankruptcy Court. The Bankruptcy Court determined that Plaintiffs' action constituted a non-core proceeding, denied Great American's request for a stay and also referred the case back to this Court. Plaintiffs subsequently filed another amended complaint in the District Court, adding Hartford as a defendant.

Upon motion by Great American, this Court dismissed the action against Great American without prejudice, pending resolution of the coverage dispute between Reliance and Plaintiffs in the Pennsylvania liquidation proceedings. Def.'s Ex. A; Op. in the Matter of G-I Holdings v. Reliance Insurance Co., et al., Civil Action No. 00-6189 (DMC) dated March 23, 2004 . This Court found

---

property from which the claim arises is permanently located in this State."
N.J.S.A. 17:30A-5

7

that no justiciable controversy existed until the time Plaintiffs exhausted their rights under the Reliance Policy.

## II. STANDARD OF REVIEW: RULE 56 SUMMARY JUDGMENT

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The moving party bears the burden of showing that there is no genuine issue of fact and it must prevail as a matter of law, or that the non-moving party has not shown facts relating to an essential element of the issue for which he bears the burden. Celotex, 477 U.S. at 331. If either showing is made then the burden shifts to the non-moving party, who must demonstrate facts which support each element for which he bears the burden and must establish the existence of genuine issues of material fact. Id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, Fed. R. Civ. P. 56(e), but must produce sufficient evidence to support a jury verdict in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

## III. DISCUSSION

### A. Comity

The doctrine of comity is implicated in this case because some of the same issues in this case are currently pending before the Pennsylvania Commonwealth Court. "The doctrine of comity teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an

opportunity to pass upon the matter." Lambert v. Blackwell, 134 F.3d 506, 514 n. 18 (3d Cir. 1997) (internal citations omitted) (quoting Rose v. Lundy, 455 U.S. 509, 518 (1982)).  However, when important federal interests are at stake, the doctrine of comity must yield.  See U.S. v. Gillock, 445 U.S. 360, 373 (1980).

### B. "Law of the Case" Doctrine

Additionally, in adjudicating NJPLIGA's motion, this Court is bound by the "law of the case" doctrine and may not relitigate issues that have already been decided by this Court or the Bankruptcy Court.  The "law of the case" doctrine provides that the same issues may not be relitigated in the same case.  See Hayman Cash Register Co. v. Sarokin, 669 F.2d 162, 165 (3d Cir. 1982); Baker v. Nat'l State Bank, 353 N.J. Super. 145, 170 (App. Div. 2002).  The purpose of this doctrine is to promote the "'judicial system's interest in finality and in efficient administration.'"  Hayman Cash Register Co., 669 F.2d at 165 (quoting Todd & Co., Inc. v. S.E.C., 637 F.2d 154, 156 (3d Cir. 1980)).  Thus, once a court decides an issue, that ruling continues "to govern the same issues in subsequent stages in the same case."  United States v. Kikumura, 947 F.2d 72, 77 (3d Cir. 1991) (citing Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988)); see also Higgins v. Swiecicki, 315 N.J. Super. 488, 492 (App. Div. 1996).  Nevertheless, the "law of the case" doctrine is a "flexible" doctrine, "calling for 'good sense' application."  Higgins v. Swiecicki, 315 N.J. Super. 488, 492 (App. Div. 1998) (citing Hart v. City of Jersey City, 308 N.J. Super. 487, 489 (App. Div. 1998)).

### IV. ANALYSIS

NJPLIGA is statutorily obligated to pay only "covered claims."  N.J.S.A. 17:30A-8(a)(1).

9

Here, the New Jersey Property-Liability Insurance Guaranty Association Act is implicated because Reliance has been declared insolvent. NJPLIGA is liable to Plaintiffs only if it is established that Plaintiffs' claims would be covered under the Reliance policy. Adjudication of Plaintiffs' claims against NJPLIGA necessarily requires resolution of the same coverage issues currently pending before the Commonwealth Court of Pennsylvania in the liquidation action against Reliance. A review of Plaintiffs' and NJPLIGA's briefs reveals that a central issue in Plaintiffs' claims against NJPLIGA is whether there is coverage under the Reliance policy - one of the many issues before the Pennsylvania court in the liquidation proceeding against Reliance.

As this Court noted in its March 23, 2004 Opinion in this case, Plaintiffs' claim against Reliance is currently pending before the Commonwealth Court of Pennsylvania. Def.'s Ex. A at 14. In light of this fact, Plaintiffs' claims against their excess insurer, Great American, have been dismissed without prejudice by this Court. Specifically, this Court has already found that the claims against Great American are not yet justiciable when Great American "has not been advised, nor have Plaintiffs alleged, that Plaintiffs have spent $15.25 million in the underlying litigation . . . Reliance has neither agreed to pay nor has not [sic] been held liable to pay the $15 million limit of its primary policy." Id. at 14-15. Plaintiffs' claims for coverage against Great American were dismissed because Great American's duty to make payments to Plaintiffs has not been established: it remains contingent upon the outcome of the Pennsylvania liquidation proceeding.

Similarly, principles of comity require dismissal of Plaintiffs' claims against NJPLIGA when the coverage issue is still pending before the Pennsylvania court. For reasons of comity as well as judicial efficiency, this Court "should defer action on causes properly within its jurisdiction until the

courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." Lambert, 134 F.3d at 514 n. 18. In this case, there are no important federal interests at stake that supersede the doctrine of comity. Compare Gillock, 445 U.S. at 373. In fact, this Court's jurisdiction is based purely on diversity - Plaintiffs raise no federal causes of action.

Additionally, if this Court were to adjudicate Plaintiffs' claims against NJPLIGA, Plaintiffs would have successfully circumvented this Court's prior decision finding that claims contingent upon the Pennsylvania court's interpretation of coverage under the Reliance policy should be dismissed without prejudice. As Defendant aptly notes, Plaintiffs are attempting "an end run around the Court's decision by bringing the issue of coverage under the Reliance policy back into the United States District Court." Def.'s Br. at 15.

Plaintiffs argue that the "law of the case" doctrine precludes this Court from dismissing or staying Plaintiffs' claims against NJPLIGA because such a ruling would be inconsistent with the Bankruptcy Court's May 21, 2002 Order denying a stay to all "Other Insurers." See G-I Holdings, Inc. v. Reliance Ins. Co., et al., 278 BR. 725, 733 (Bankr. D.N.J. 2002). This argument is unpersuasive for several reasons. First, it is unclear that the Bankruptcy Court was even categorizing NJPLIGA within the class of "Other Insurers" or solvent insurers to which it denied a stay. See id. at 733 (rejecting argument that Great American was entitled to a stay pursuant to the New Jersey Property-Liability Insurance Guaranty Association Act and differentiating Great American's position from that of NJPLIGA in such cases). Additionally, NJPLIGA was not a party to this action at the time of the Bankruptcy Court's May 21, 2002 Order. Finally, the issue addressed by the Bankruptcy

Court in its May 21, 2002 Order is distinct from the issue here. Plaintiffs argue that this Court "need not, and should not, consider again whether to stay [their] claims against NJPLIGA." Pl.'s Br. at 15. Not only did the Bankruptcy Court never determine whether Plaintiffs' claims against the NJPLIGA should be stayed; but also, deciding that issue now will not conflict with the Bankruptcy Court's previous ruling. The Bankruptcy Court found that a stay was inappropriate as to solvent insurers. Here, in deciding NJPLIGA's summary judgment motion, this Court must decide whether dismissal as to NJPLIGA is appropriate when the issue of coverage under the Reliance policy is still pending before another court. Resolving this issue as to NJPLIGA does not violate the "law of the case" doctrine and is not grounds for denying NJPLIGA's motion.

## V.   CONCLUSION

For the reasons stated, it is the finding of this Court that Defendant's motion for summary judgment is **granted**. An appropriate Order accompanies this Opinion.

    S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:       December   22  , 2006
Orig.:      Clerk
cc:         Counsel of Record
            The Honorable Mark Falk, U.S.M.J.
            File

12